IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | Case No. 1:23-CR-426-JEB |
| ) | |
| PHILLIP CRAWFORD ) | |

**RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE*
REGARDING VIDEO MONTAGE OF THE CAPITOL**

Philip Crawford, Defendant, files this response to the government's motion *in limine* to admit a government-created video montage, regarding riots at the U.S. Capitol, without subscribing witnesses. Mr. Crawford requests that the Court deny the government's motion and not admit the government's montage exhibit into evidence at this time. The proposed exhibit, first, is not strictly-speaking *evidence* but rather a manipulated and editorialized government demonstrative, not authorized by Rule 1006's "summary evidence rule"; second, the government has not shown that the proposed exhibit is relevant, and in fact the exhibit is overwhelmingly irrelevant, unfairly prejudicial, and liable to confuse the issues; and third, the exhibit is cumulative and unnecessary, given that the parties have already stipulated to the facts that the video montage seeks to establish. Any of these reasons is sufficient basis to reject the government's pre-trial request to admit this video montage exhibit; together they decidedly confirm that that the exhibit should be precluded at this time.

1

## **Background Information**

Most of the factual background provided in the government's motion *in limine* we do not dispute. On January 6, 2021, large crowds gathered in various places near and around the U.S. Capitol. Doc. 31 at 1. Capitol police attempted to keep the crowds away from the Capitol Building, but, at different times and places, the crowds traversed the barricades and approached the Capitol Building. *Id*. Interactions between protesters and police eventually became violent, in certain locations. At 2:13 PM, "individuals in the crowd forced entry into the U.S. Capitol building itself on the West side near the Senate." Doc. 31 at 1-2. Elected officials evacuated or were secured behind locked doors. Doc 31 at 2. Meanwhile, trespassers entered into and paraded through the halls of Congress, in some cases vandalizing hallways and Congressional office rooms. We all witnessed the chaos and destruction—along with the fear that was inspired—that day. Most of watched it live, and perhaps we read about it in great detail, that day and in days since.

The video montage that the government created and now submits as evidence purports to show these various events throughout the Capitol area, in "summary" form, through an amalgamation of various videos; superimposed audio recordings, ostensibly from recorded police calls; satellite images and Google Earth screenshots; edited Capitol maps and floorplans; and textbox labels

and descriptive slides.  *See* Doc. 31 at 2-3; Govt. *Exhibit A*.  As the government's motion notes, the montage "is 15 minutes, 30 seconds in length."  Doc. 31 at 3.  Mr. Crawford is "depicted within the montage from 14 minutes, 30 seconds, to the approximately 15 minute, 8 second, mark."  *Id.*  In other words, he appears for 38 seconds of the 15-minute, 30-second montage.

Nonetheless, as we focus on *this* case and *this* defendant, still more factual details about the video montage and events portrayed therein are needed to illustrate issues key to this motion and response.  The first set of facts concerns the format of the government's montage exhibit, and the second set concerns the content of the montage exhibit.  First, regarding the format of the montage:

- The government-created montage combines and arranges more than 77 individual documents.  These include at least 28 separate videos or video clips; approximately 20-23 (though possibly more) audio recordings; Google Earth screenshots; Capitol maps showing the Capitol Building and Capitol Hill area; and slides with titles, descriptions, and time stamps.

- The majority of the documents that comprise the government's montage have been edited.  Google Earth screenshots have been converted into video, through which the images are rotated and enlarged to "zoom in" on various areas within the image; labels have been added to the screenshots.  Similarly, Capitol maps and floorplans have been manipulated to shift the

viewers perspective and focus on various points, through moving animations; areas of focus have been circled or otherwise highlighted, and labels have been added. In many instances, Capitol maps and floorplans have been merged with the Google Earth images, superimposing one document over the other to create an almost-3-dimensional visualization.

- Throughout the montage, the government has created textboxes with titles, labels, descriptions, and time stamps that have been superimposed on top of the original images and videos.

- Audio recordings, which come primarily from "'radio runs' from the U.S. Capitol Police communication system" (Doc. 31 at 3), i.e. recorded police calls, are similarly superimposed on top of images and videos. The effect is to show the viewer police conversations that were allegedly, possibly taking place at or around the times of the events depicted in the images and videos. But the audio recordings do not come from the videos—from the original documents that are displayed in the montage—but rather from separate sources, neither referenced nor cited in the montage itself. The audio and video thus have no physical, technological, or historiological—simply put, no *original*—connection to one another, but have been spliced together in a style that followed the government creator's editorial license.

Second, regarding the content displayed and indicated through the government's montage:

- The montage purports to show events on January 6th in a more-or-less chronological way, but videos show various groups of people and events that were separated by time and space. Thus, early videos show a large crowd of protestors in the early afternoon, beginning at 12:51 PM. Other videos show crowds and smaller groups well over 4 hours later, after 4:12 and 4:30 PM. Presumably, these groups consisted of different people.

- Likewise, videos and images in the montage shift between areas within and around the Capitol building that are separated by long distances. Some videos and images show protesters on the West side of the Capitol; other videos show protesters on the East side of the Capitol; and many other videos show trespassing protesters—or rioters—inside the Capitol building, on different levels and in distinct hallways and rooms. These groups certainly were composed of different people.

- The government's montage does *not* show, nor does the government assert in its motion, that the various people who are depicted in independent videos and images within the montage were in contact with each other. They do not allege that that those people had knowledge of separate events

that occurred, with other groups were protesting or rioting at other times and places.

- Since only 38 seconds of the proposed montage depicts Mr. Crawford, according to the government (*see* Doc. 31 at 3), 14 minutes and 52 seconds—over 75 percent—of the montage exhibit shows other individuals who are not charged in this case. Of the 28 or more videos that comprise the montage, only *one* video shows an alleged incident in which Mr. Crawford directly participated: namely, an exchange between police and protesters at the entrance to the Lower West Terrace Tunnel, at 4:12 PM. The government's montage does not reveal that Mr. Crawford participated or was present in any *other* crowd or any *other* incident that occurred around the Capitol, though many other crowds and incidents are depicted. Furthermore, the montage does not suggest that Mr. Crawford communicated with people shown in other videos within the montage, or had any knowledge of events that were occurring in places and times other than the Lower West Terrace Tunnell around 4:12 PM.

## Argument

I. **The government-created montage is not proper evidence, and is not authorized by Rule 1006's summary evidence rule.**

Ordinarily, an exhibit created by a party to support its argument, like the argument itself, is not admissible evidence. *See, e.g.*, D.C. Crim. Jury Instruction

6

2.105 (noting that statements and arguments of lawyers are not evidence). Instead, admissible evidence generally must consist of *original* documents—unedited and unmanipulated by the proponent. *See* Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise") *See United States v. Jackson*, 488 F. Supp. 2d 866, 870-72 (D. Neb. 2007) (excluding cut-and-paste document purporting to be transcript of instant message conversations because, among other things, there was missing data, nonsensical timing sequences, and editorial information, such that it was not an accurate reflection of the original communications). However, under Federal Rule of Evidence 1006, a party may produce and introduce a written or oral summary or chart to describe the content of voluminous documents which cannot readily be examined and introduced in court. Rule 1006 states in full:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006. In order to introduce its montage, the government argues that the proposed exhibit is authorized by Rule 1006. Doc. 31 at 7. But the government-created montage is not the kind of "summary, chart, or calculation" that Rule 1006 permits. *Id.* Rather, it is much more like a visual *argument*, which the government

7

might use in closing—assuming the contents of the montage video were admitted at trial—but which cannot be introduced as independent and original evidence.

First, the government's montage video is obviously not an oral or written summarization, nor is it a chart or calculation categorizing or describing other admissible evidence. Rather, the montage is, among other things, a *compilation* of other videos, documents, and images that the government might otherwise attempt to introduce independently. The government suggests that, because the proposed montage exhibit condenses other potential pieces of evidence, it serves the same summarizing *function* as those summaries and charts allowed by Rule 1006. *See* Doc. 31 at 7. But a compilation is not a summary.

Moreover, the government's montage is more than *just* a compilation, because it is editorialized: a product of intentional manipulation and arrangement. The exhibit takes original evidence that might possibly be introduced at trial (through proper procedures, following the Rules of Evidence), and edits, combines, rearranges, splices, superimposes, and highlights them in a way that the government wishes to frame those separate pieces of evidence, i.e., a manner that supports the government's narrative. But by combining, rearranging, splicing, superimposing, and generally putting these pieces of evidence into a montage, the government is actually *changing* the evidence that it purports to summarize.

In creating what is essentially a "documentary", the government is exercising editorial control and creating a separate piece of art—or at least a separate product, different from the documents from which it is derived and the materials that compose it.  A film editor or documentarian, like Ken Burns, may use primary sources—raw footage, recordings, photographs, and documents.  But when he produces his documentary, he has made an entirely new creation, distinct from and greater than the primary materials that made up the film.  That documentary, in turn, because it was edited and intentionally arranged, has a different, more persuasive effect than the does the film's more objective original source material.  There is a reason people prefer Ken Burns' films to watching unedited WWII film reels.[1]

Through this proposed video montage, the government becomes the documentarian:  creating a new product with a unique message and effect, not summarizing voluminous data in a chart or calculation.  Its proposed montage does not compile videos and documents neutrally, but rather clips and combines them in an argumentative way.  It edits documents—swirls, zooms in, and labels— to make the documents more entertaining and compelling.  It splices videos and images together, forming a flowing narrative that makes each video segment

---

[1] For similar reasons, most Americans prefer to watch the editorializations of Fox News and MSNBC rather than CSPAN.

appear to follow from and connect with the other. It superimposes uncited, unexplained audio recordings onto video clips and images with which the audio recordings were not originally connected.[2] This greatly enhances the emotional effect for the viewer, and makes it seem as though the conversations *were* captured by the video. Altogether, the government's creative montage has a powerful, Ken Burns-like effect, depicting the events around the Capitol as a coordinated battle or war, with various groups of protesters maneuvering like attacking armies and overwhelmed Capitol police reacting like besieged combatants.

To be sure, in closing statements, government attorneys may make these arguments—if admitted evidence supports them. Why? Because in closing, an attorney is free to use previously-admitted evidence, and portray it in a manner and through a lens that he prefers. He is also free to use demonstrative exhibits that summarize both the introduced evidence and his argument. But this closing

---

[2] This splicing, or superimposing, of uncited audio onto separate video clips raises a significant authenticity issue, which we do not waive. To the contrary, Mr. Crawford objects to the government's proposed montage exhibit on authenticity grounds, as well grounds raised above. The superimposed audio in the montage exemplifies the danger of allowing evidence in through a montage exhibit, rather than through the laying of proper foundation: without the individual recordings themselves, verified by those who could authenticate them, we have no way of ascertaining whether or not the audio recordings are authentic reproductions of the police calls, from how many sources of material they were derived (i.e. how many different recordings), and whether times indicated in the video montage are the same times at which the recorded calls took place.

argument, and the demonstrative exhibits used therein, are not *themselves* evidence that fact finders can consider in the case-in-chief. Rather, jurors are informed and understand that those materials are products of the attorney, merely used to explain evidence or support the attorney's argument. Thus, if the government introduces relevant videos, audio recordings, maps, and other documents, then perhaps the government may rightfully show a montage in closing argument. But even then, the montage will not, and should not, be considered *evidence* in the case.

Even more certainly, the government has no right to introduce that montage exhibit—the edited and manipulated amalgamation of yet-to-be-introduced evidentiary documents—prior to introducing the component evidentiary pieces. Therefore, admitting the government's montage exhibit, at this juncture, would be premature. Further, it would run afoul of authenticity requirements, the best evidence rule, and would be an improper application of Rule 1006's summary evidence rule. In the absence of justification under Rule 1006, the government must admit the original evidentiary documents, not an edited amalgamation. *See* Fed. R. Evid. 1002.

**II.   The government has not shown that the montage exhibit is relevant; actually, the montage is irrelevant and its probative value is outweighed by the risk of unfair prejudice and confusion of issues.**

With the government's motion to admit the video montage exhibit, the government bears the burden of proving that the proposed exhibit is relevant

11

under Federal Rules of Evidence 401 to 403.  Rule 401 sets forth the basic rule on relevance, providing that:

> Evidence is relevant if:
> (a)  it has any tendency to make a fact more or less probable than it would be without the evidence; and
> (b)  the fact is of consequence in determining the action.

Fed. R. Evid. 401.  Even if it is found to be relevant, Rule 403 prohibits the introduction of evidence if its probative value is outweighed by other dangers.  Pursuant to Rule 403:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid 403.

In this instance, the government has failed to prove that the proposed montage exhibit, in entirety or in bulk, is relevant to this case.  In fact, almost the entirety of the government's video montage is *irrelevant* because it focuses on places and times where Mr. Crawford was not present.  The government has not shown that Mr. Crawford participated in, or even had knowledge of, the events depicted in the video montage, outside of the 38 seconds and one video clip in which he does appear.  The vast majority of the montage does not make any consequential fact more or less probable, because it simply does not relate to Mr. Crawford.

Furthermore, even if it were relevant, the government's montage exhibit threatens to unfairly prejudice Mr. Crawford, confuse the issues in the case, and mislead the jury, to an extent that far outweighs any probative value of the montage. Mr. Crawford simply cannot be held responsible for people and events of which was not aware. But this montage exhibit, by highlighting villainous people and horrific events unrelated to Mr. Crawford, may reasonably lead jurors to blame Mr. Crawford for acts and events in which he had no part.

As noted above, the proposed montage exhibit portrays the events of January 6th as a cohesive and in-some-sense coordinated attack. It moves from isolated event to isolated event—skipping over lengthy periods of time and moving between areas distant from one another—in order to depict the unruly crowds as coordinated attackers. Furthermore, it inserts sensational audio recordings to align viewer perspectives with overwhelmed and fearful police officers, to portray them as besieged combatants defending against the attacking armies. This makes it seem as if Mr. Crawford is responsible for things he did not actually do. Instead of showing jurors evidence of Mr. Crawford and his conduct, the video montage confuses the issues and risks misleading the jury, by making the trial an indictment of the events of January 6th, rather than an indictment of Mr. Crawford's alleged actions. The scenes which lack any temporal or proximate

relationship to Mr. Crawford are irrelevant and do nothing but inflame and confuse the issues.

The government relies on *United States v. Carpenter*, 2023 WL 1860978 at *3, (D.D.C. February 9, 2023). *See* Doc. 31 at 5.  In *Carpenter*, the Court considered a defendant's motion to exclude a video montage exhibit created by the government (though apparently a different montage than that which is proposed here). Carpenter, 2023 WL at *3.  Finding the defendant's motion premature, and also finding that the montage exhibit was probative with respect to particular elements of the offenses charged in that case, the Court concluded that, at the pre-trial stage, it saw "no reason to exclude" the potential government exhibit.  *Id.* at 3-4. *Carpenter* is inapplicable to this case, however, for several reasons.

First and foremost, *Carpenter* involved a defense motion to exclude—not a government motion to admit.  In *Carpenter*, therefore, the defense bore the burden of proving that the government's proposed exhibit was inadmissible under the Rules of Evidence. The Court rightly leaned in favor of letting ordinary evidentiary procedures control rather than ruling prematurely.

Here, the situation is very different from that in *Carpenter*:  the Court considers the *government's* motion to admit evidence pretrial, and thus the government carries the burden of proving that the exhibit should be admitted into evidence, despite not having laid proper foundation through the ordinary course

of procedures; the Court's presumption, as in *Carpenter*, must still be on letting ordinary procedures play out, and in this case, that means therefore not admitting the evidence prematurely.  As it did in *Carpenter*, the burden should weigh heavily in this instance:  the defense in *Carpenter* couldn't meet its burden, and here the government hasn't met its burden.

*Carpenter* is also inapposite because it involved a different government montage exhibit.  *Id.* at *3 (describing that case's exhibit as a "22-minute montage of surveillance footage," rather than the 15-minute, 30-second montage at issue here).  The characteristics of that montage exhibit, and the facts of that case, may well have confirmed the relevance of the exhibit, while mitigating the risks of other dangers.  Here, with a different video montage at issue, the Court must assess the facts as they are presented in this unique case.  The government has not laid sufficient foundation for the propriety, authenticity, or relevance of the video montage exhibit, so the Court should not admit it prior to trial.

The government does attempt to establish a connection of relevance between the proposed montage and this case, by listing particular counts of Mr. Crawford's indictment that seem to have a general connection with the protests of January 6th.  *See* Doc. 31 at 5-7.  The government argues that depictions of other protester and rioter activity—inside and outside the Capitol Building, in places and times where Mr. Crawford was not present—are relevant to show (1) that

15

there was a civil disorder (*id.* at 5-6), (2) that Mr. Crawford "entered and remained in a restricted ground without lawful authority" (*id.* at 6), (3) that Mr. Crawford's conduct "did in fact impede or disrupt the orderly conduct of Government business and official functions" (*id.* at 6-7), and (4) that Mr. Crawford was "on Capitol grounds" while engaging in disorderly conduct (*id.* at 7). But the argument that the montage exhibit is relevant and essential to establishing these facts is weak at best.

The 38 seconds of footage in which Mr. Crawford appears—the only piece of the montage actually relevant to Mr. Crawford and his case—can establish the basic facts that the government says the montage seeks to prove. That single video clip reflects a (1) a civil disorder, (2) that the disorder took place restricted grounds without lawful authority, (3) that the disorder impeded or disrupted the conduct of government business, and (4) that disorderly conduct was on Capitol grounds. In fact, that one 38-second video clip is the only component of the montage exhibit that says anything about whether Mr. Crawford himself participated in or advanced that civil disorder. Testimony from witnesses regarding Mr. Crawford and his surrounding group, and other videos showing Mr. Crawford and people near him,[3] would be much more direct, relevant evidence regarding Mr.

---

[3] The government has provided the defense videos that actually show Mr. Crawford and the crowd of protesters surrounded him.

16

Crawford's conduct and role. Conversely, videos of groups far away from Mr. Crawford, showing events he knew nothing about, are neither necessary nor relevant. They also severely prejudice Mr. Crawford by inflaming and confusing the issues, and by misleading jurors away from evidence that is relevant.

### III. The montage exhibit is cumulative and unnecessary because the parties have stipulated to facts that the montage seeks to establish.

In addition to protecting against unfair prejudice and confusion of the issues, Rule 403 cautions against admitting evidence the probative value of which is outweighed by the risk of "undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Even relevant evidence, if it is cumulative or a waste of the Court's time and resources, should be excluded pursuant to Rule 403. If the probative value of the proposed evidence is diminutive, that is even more reason to exclude.

In this case, the defense and government have stipulated to certain facts: First, we stipulated that "events on the grounds of the United States Capitol constituted a public disturbance that involved acts of violence by assemblages of three or more persons. That public disturbance caused an immediate danger of, or resulted in damage or injury to, the property or person of at least one other individual." Second, we stipulated to factual details surrounding a joint Session of Congress that took place on January 6th, that members of Congress and the Vice President had to evacuate, and that the Senate and House went into recess until

17

after the time when protest disturbances had ended. These stipulations, without the government needing to present any evidence at all, cover the facts that the government says the video montage exhibit is relevant to prove, i.e. that there was a civil disorder on restricted, Capitol grounds, which impeded or disrupted government business. *See* Doc. 31 at 5-7. With these facts already established by stipulation, the proposed montage exhibit becomes even less relevant to Mr. Crawford's case: the material facts that the montage *very loosely* relates to are not even contested; thus the facts are not "of consequence to" or determinative of the outcome of the case. Fed. R. Evid. 401. The effect of the video montage, absent the alleged purpose of establishing facts related to the civil disorder, etc., is simply to prejudice Mr. Crawford and confuse the issues, without any other disguise or justification.

Furthermore, admitting the government's montage exhibit, when the facts that the exhibit seeks to prove are already established by stipulation (as well as by other, more direct evidence that will be introduced at trial), will inevitably create a cumulative recitation of facts and argument that are wholly unnecessary. In the final analysis, the probative value of the proposed montage exhibit is minimized, and the countervailing dangers increased, because the defense has already stipulated to the relevant facts that the government seeks to establish through the montage exhibit.

## CONCLUSION

In response to the government's motion *in limine* to admit a 15 ½-minute government-created video montage exhibit, Mr. Crawford respectfully requests that the Court deny that motion. The video montage is not evidence but argument, and not authorized by the summary evidence rule. As such, the motion is premature and without proper foundation. The government has also failed to show that the video montage is relevant, and in fact the montage appears to be largely irrelevant. It is also unduly prejudicial, causing a significant danger of confusing the issues and misleading the jury. Finally, the exhibit is cumulative and unnecessary, given that the facts that it seeks to established have already been stipulated, and in any case could easily be established through more direct and relevant evidence.

Respectfully submitted, this 25th day of March 2024,

/s/ *Thomas L. Hawker*
THOMAS L. HAWKER
Georgia Bar No. 338670

/s/ *Ross Brockway*
ROSS BROCKWAY
Georgia Bar. No. 490836
Massachusetts Bar. No. 703246
Attorneys for PHILLIP CRAWFORD

Federal Defender Program, Inc.
Sute 1500, Centennial Tower
101 Marietta Street, NW
Atlanta, Georgia 30303
(404) 688-7530
Thomas_Hawker@FD.org
Ross_Brockway@FD.org