UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 23-CR-426 (JEB) |
| | : | |
| v. | : | |
| | : | |
| PHILLIP CRAWFORD, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S REPLY TO DEFENDANT'S POST-TRIAL BRIEF**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this reply to the post-trial brief (ECF No. 68) addressing the three issues raised by the Court at the conclusion of the bench trial in this case, but before the verdict is rendered as to Count Six: 1) whether Crawford's acts "involve physical contact" with the officer victim of the assault charged in Count Six, in violation of 18 U.S.C. § 111(a); 2) whether 18 U.S.C. § 231 can serve as the "other felony" the defendant intended to commit for purposes of a felony 18 U.S.C. § 111(a) conviction; and 3) whether the defendant must be physically present for the Court's verdict on the remaining charge of 18 U.S.C. § 111(a). The defendant's response (ECF No. 69) is unavailing and the answer to all three questions remains yes.

**Discussion**

The defendant assaulted several police officers on January 6, 2021. In Count Six, the defendant is charged with throwing a gas mask at a member of the Metropolitan Police Department. To prove a felony violation of 18 U.S.C. § 111(a)(1), the government must prove

1

either the offense "involve[d] physical contact," or the offense was committed with "the intent to commit another felony."[1]

## I. The Gas Mask Throw Involved Physical Contact With the Victim

The defendant concedes, "throwing an object that makes physical contact with the victim can amount to a battery as well as a violation of §111(a)." ECF No. 69 p. 5. Should this Court find that the gas mask struck the officer first, above the shield, that finding would be dispositive and this element would be met.

But should this Court find that the gas mask hit the officer's shield, thus making contact with an intervening object, a felony conviction still follows. The defendant suggests that the victim officer had not yet held the shield with his hand, thereby making the shield less intimately connected. But the possibility that an officer may have been *more* intimately connected with a piece of police equipment does not mean the connection between the officer and his shield in this case is insufficient.

The events are captured most closely in Government Trial Exhibit 503A (hereinafter, "Ex. 503A"). At 4:13 p.m., the officer depicted within the frame just broke from a physical struggle with another rioter. *See* Ex. 503A at 2:29. After a break in action of about 20 seconds, the officer bent down to grab his helmet under a United States Capitol Police shield. *Id*. at 2:58. The officer picked up the shield with his right hand, and the helmet with his left. He then leaned the shield against his waist as he attempted to put the helmet on his head. *Id*. at 3:00-3:05. During this time, the defendant threw the mask at the officer. The officer reacted to the throw and as the mask fell,

---

[1] The defendant seeks acquittal of count six. ECF No. 69 p. 29. But because the remaining elements do not seem to be in dispute, even a finding consistent with the defendant's arguments would mandate a conviction of a misdemeanor violation of 18 U.S.C. § 111(a)(1).

the officer attempted to grab it. The officer missed and then bent over to pick up the mask. *Id*. at

3:11. When the officer bent over, his helmet once again fell. Another rioter attempted to grab the

once-again-fallen helmet. The officer and this rioter then struggled for possession of the helmet.

*Id*. 3:12-3:15.



*Figure 1: Ex. 503A Top left: Mask immediately out of Crawford's hands; top right: Strikes officer above shield; bottom left: begins to tumble down shield; bottom right: continues to fall.*

Relying mainly on Florida's common law, the defendant argues that this Court should look

to "the degree of impact and effect on the [victim]." ECF No. 69, p. 9 (citing *Williamson v. State*,

510 So.2d 335 (Fla. App. 1987)). Ultimately, the defendant's argument asks this Court to add a

new requirement of some showing of effect on the victim. But even the Florida Supreme Court did

not take this position.

In the case the defendant relies on, *Clark v. State*, 783 So.2d 967 (Fla. 2001), a defendant

argued, "the incident did not constitute battery because the victim's truck could not be considered

an extension of his person and thus there was no touching or striking of his person as required

3

under the battery statute." 783 So.2d at 968. Ultimately, the Florida Supreme Court suggested that the case turned on whether the victim's "vehicle is sufficiently closely connected to a person so that the striking of the vehicle would constitute a battery on the person. Thus, *this is generally a question of fact for the jury*." *Clark*, 783 So.2d at 969 (emphasis added). Importantly here, the Florida Supreme Court rejected the idea that, "as a matter of law the striking of the outer body of an automobile can never constitute a touching for purposes of battery[.]" *Id*. In other words, *Clark* suggests that a defendant who hits the victim's car *can* be seen to make physical contact to constitute a battery.

An automobile would have provided more protection to the officers within the tunnel. Instead—and unlike an automobile—the shield at issue in the present case was not firmly grounded by weight and four wheels. One hypothetical considered by this Court during the oral argument included if the mask hit a nearby trash container. Again, in that instance, a trash container would be firmly planted to the ground, though presumably without four wheels. Again, in both the automobile and the trash container neither would be leaning against the officer when the force is applied to the object. Instead, the shield in the present case was leaning directly against the officer and would not have *shielded* any of the force of the thrown mask.

Although the law does not require a specific effect upon a victim, it can be a helpful consideration for the finder-of-fact in determining whether the offense involves physical contact. The defendant incorrectly argues there was no evidence of an effect of the impact of Crawford's thrown gas mask on the officer. But the evidence shows otherwise. The officer was struck (Ex. 503A, at 3:05), then sought to recover the mask that was thrown (Ex. 503A, at 3:11). The officer's reaction proves an effect on him. But ultimately, any effect on the victim is only one of the

4

considerations in determining if the offense involved physical contact. In the present case, the offense committed by the defendant involved physical contact to the officer.

## II. Crawford Acted With the Intent to Commit Another Felony

### a. The 'other felony' provision in 18 U.S.C. § 111(a)(1) can be satisfied by intent to commit 18 U.S.C. § 231(a)(3)

The defendant suggests that *United States v. Stevens*, 105 F.4th 473 (D.D.C. 2024), does not control. Although the key issue within the *Stevens* case relates to which guideline is applicable at sentencing for a violation of 111(a)(1), the opinion does not confine itself to an interpretation of *just* the guidelines.

Directly applicable to the question in this case, the D.C. Court of Appeals in *Stevens* reviewed "*de novo* whether the Section 231(a)(3) civil disorder offense constitutes 'another felony' separate from the Section 111(a)(1) count. We conclude that it does." *Stevens*, 105 F.4th at ___, *13-14. The court continued; "Section 231(a)(3)'s distinct requirements qualify it as 'another felony' separate from Section 111(a)(1)." *Id*. at *14. As provided by the Court of Appeals, "We conclude that Stevens has shown no plain error in the district court's conclusion that he committed felonious assault. *We additionally find* that he acted with an intent to commit another felony. Thus, the district court properly applied Section 2A2.2 to Stevens' Section 111(a)(1) convictions." *Id*. at *11 (emphasis added).

Crawford asks this Court to assume that the Court of Appeals constrained its analysis to the U.S. Sentencing Guidelines. But *Stevens* used broader language to decide the issue. In its finding that the defendant in *Stevens* acted with an intent to commit another felony, the Court of Appeals adopted the position that a violation of 18 U.S.C. § 231(a)(3) *could* provide the requisite felonious intent in a violation of 18 U.S.C. § 111(a)(1). This Court should apply the same logic

when determining if the intent to commit a violation of 18 U.S.C. § 231(a)(3) can provide the necessary intent when committing a felony violation of 18 U.S.C. § 111(a)(1).

Additionally, an ambiguity in the statute does not exist. Although the intent prong of a felony violation of 18 U.S.C. § 111(a)(1) does not provide *which* felony a defendant must have intended, it is still clear that committing the offense with the intent to commit another felony mandates the increased penalty. "The simple existence of some statutory ambiguity . . . is not sufficient to warrant application of [the rule of lenity], for most statutes are ambiguous to some degree." *Muscarello v. United States*, 524 U.S. 125, 138 (1998). To invoke the rule of lenity, "a court must conclude that 'there is a *grievous* ambiguity or uncertainty in the statute.'" *United States v. Burwell*, 690 F.3d 500, 515 (D.C. Cir. 2012) (emphasis in original) (En banc) (*quoting Muscarello*, 524 U.S. at 139). The rule simply does not apply here.

### b. Crawford's newly raised factual defense is also unavailing

Stretching beyond the topics the Court sought post-trial briefing on, the defendant now raises a new factual argument against a felony conviction for Count Six—he claims that just moments before he threw a large and heavy gas mask at the same line of officers guarding the same tunnel where he assaulted four other police officers, he lost his intent to obstruct, impede, or interfere with law enforcement. Now, he claims that he threw the gas mask at those same police officers only in frustration as he turned to leave, and not with the same intent he had in the four prior assaults just moments before. *Id.* at 26.

It defies logic—and strains credulity—to suggest that the defendant had the intent to obstruct those officers a minute before, and then no longer had the intent to obstruct the officers when he threw a mask at them. As previously considered by this Court in other counts, the 'shirt and shout' is damning. There is no evidence of an additional speech encouraging everyone to leave.

Further, in his guilty plea the defendant has already admitted that during this entire time period, up through 4:13:38, he committed acts to obstruct, impede, or interfere with a law enforcement officer performing his official duties.[2] ECF No. 52, at 2. The defendant had the intent to commit 18 U.S.C. § 231(a)(3) during his assault on police in violation of 18 U.S.C. § 111(a)(1).

### III. Federal Rule of Criminal Procedure 43 Requires the Defendant to Appear In Person for the Verdict, and the Defendant Does Not Meet the Limited Exceptions Allowing for Waiver

The defendant has responded to the Court's inquiry as to whether he is required to appear at the verdict by offering to waive his presence. However, waiver is not acceptable here because Rule 43 requires that a defendant "must be present" at "every stage of the trial, including… the return of the verdict." Fed. R. Crim. P. R 43(a)(2). This rule was created in widely accepted recognition of "the intangible benefits and impact of requiring a defendant to appear before a federal judicial officer in a federal courtroom, and [recognizing] what is lost when virtual presence is substituted for actual presence." *See* Advisory Comm. Notes to 2011 Amendment to Fed. R. Crim. P. R 43; *United States v. Shaver*, No. 6:18-cr-00033-GFVT-HAI, 2023 WL 6961552, at *2 (E.D. Ky., Oct. 20, 2023) ("Being physically present in the courtroom with another has inscrutable effects— a certain human element—that is impossible to replicate through video communications.").

The defendant's offer to waive his presence does not meaningfully address how his waiver comports with these well-established principles. His waiver of physical presence would not further

---

[2] As the government noted at the time, in entering his plea, Crawford admitted the assaults at Counts Two through Five served as the specific acts necessary to establish a violation of Section 231(a)(3). *See* ECF No. 52-1, at 1 (Notice of Deficiencies in Statement of Offense). In other words, he admitted those acts served to obstruct the police even if he did not admit they constituted a violation of Section 111(a)(1).

the interests of justice. Rather, the primary purported justification for the defendant's request to waive his appearance is the anticipated costs of travel to Washington, D.C. That is not a sufficient reason to absent himself from this critical stage of the proceedings.

While Rule 43(c)(1) permits a defendant to waive his continued presence under certain narrow circumstances, none of them exist in this case. The defendant has argued that not appearing in person for the verdict is akin to voluntarily absenting himself after the trial has begun under Rule 43(c)(1)(A). However, as the government cited in its initial brief, courts have uniformly recognized that these exceptions do not provide a mechanism for defendants to waive their presence for ease or preference. Rather, these exceptions should only apply where a defendant has committed a culpable act that would have otherwise imperiled the proceedings. *See* Government's Post-Trial Brief, p. 17. That is not the case here.

Appearance via video conference is likewise insufficient here. Rule 43 contemplates participation through video teleconference as an alternative to appearing in person only in misdemeanor cases. Consistent with well-established precedent, the Rules Committee thus recognized the distinction between misdemeanor and felony cases and drew a line differentiating between the two. Here, the defendant is charged with and has been convicted of several felonies for his criminal conduct on January 6 and, accordingly, should be required to comply with the rules that apply to felony defendants. See *Valenzuela-Gonzalez v. U.S. Dist. Ct. for Dist. of AZ,* 915 F.2d 1276 (9th Cir. 1990) (holding that arraignment by closed circuit television does not constitute substantial compliance with Rule 43 where the request was made for convenience – rather than necessity).

The defendant cites another January 6 case, *United States v. Hicks,* No. 23-CR-399 (JMC), for the proposition that he should not have to appear for the verdict in this case. While the

government maintains its position that Hicks also should have been required to appear in person for the verdict, this case is distinguishable regardless. In *Hicks*, there were only five counts at issue, and the only felony was one count of 18 U.S.C. § 231(a)(3). Furthermore, the court ultimately acquitted Hicks of everything except 40 U.S.C. § 5104(e)(2)(D) and U.S.C. § 5104(e)(2)(G).

Instead this case is more analogous to a different January 6 case, *United States v. Joseph Irwin & John Joseph Richter,* No. 21-CR-589 (RDM). There the court denied the defendants' similarly reasoned request to appear for the verdict following a bench trial via video conference. In denying this request, Judge Moss said the following:

> Defendants' request is based on the expense and time associated with travelling to Washington, D.C., *id.* at 1-2, but the Federal Rules of Criminal Procedure do not contemplate an exception on that basis. Nor may Defendants waive their presence as a matter of preference. Rule 43(c) provides that a "defendant who was initially present at trial... waives the right to be present" when, as relevant here, he is "voluntarily absent after the trial has begun" or "when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior." Neither subsection applies here… [T]he purpose of Rule 43(c) is to allow a trial to continue when a defendant's actions would otherwise have "jeopardized case progression," not to allow "a defendant to waive [his] presence for ease or preference." *United States v. Khariton*, 2023 WL 3977695, at *4 (S.D. Ga. June 13, 2023). Moreover, as the D.C. Circuit has recognized in the context of sentencing proceedings, and as the Government here submits, "the state has an independent interest in requiring a public [proceeding]," at which the defendant is present, "in order to assure the appearance of justice and to provide a ceremonial ritual at which society pronounces its judgment." *United States v. Lastra*, 973 F.2d 952, 955 (D.C. Cir. 1992). Finally, even if the Court might permit a defendant to waive his or her presence for the return of the verdict under exceptional circumstances, this is not such a case. Here, the charges that Defendants face are serious ones, and the reasons that they give for seeking permission not to appear are far from compelling.

ECF No. 151, Minute Order, May 5, 2024.

Here, the government charged the defendant with eleven counts, the majority of which are felonies. Moreover, the defendant has already pled guilty to five felonies – one count of 18 U.S.C. § 231(a)(3) and four counts of one count of 18 U.S.C. § 111(a)(1) – plus a misdemeanor in 40

U.S.C. § 5104(e)(2)(F). The Court has additionally found the defendant guilty after trial of 18 U.S.C. §1752(a)(1), 18 U.S.C. §1752(a)(2), 18 U.S.C. § 1752(a)(4), and 40 U.S.C. § 5104(e)(2)(D).

Had the trial on the remaining five counts – including the one remaining at issue – not been pending when the defendant pled on May 17, 2024, the government almost certainly would have requested that the defendant be taken into custody immediately following his plea. Regardless of the Court's ruling on the remaining charge, the government intends to request that the defendant be taken into custody following the verdict, given the ten counts the defendant has already been found guilty of committing. The defendant has not met his burden to prove by clear and convincing evidence that Crawford "is not likely to flee or pose a danger to the safety of any other person or the community if released." *See* 18 U.S.C. § 3143(a)(1). Given his history of defying the Court's release conditions with respect to his home detention (*see* ECF 13 & 14), and the amount, nature, and facts that gave rise to his convictions, the defendant is unlikely to be able to meet that burden. To that end, the government has a compelling interest in the defendant returning in person for the verdict.

Here, the defendant's desire to participate virtually as a matter of convenience and cost savings plainly falls outside the limited exception contemplated by the rule. And, if the defendant's argument were accepted, the exception—which is intended to be limited to extraordinary and unique scenarios—would swallow the rule. Indeed, a defendant could always cite costs associated with attending trial, particularly when the alleged conduct occurred in a jurisdiction where the defendant does not reside, as a basis to appear virtually or not at all. Such a result is unacceptable. The defendant should not be permitted to subvert Rule 43 or its limited exceptions, which are plainly not applicable to these circumstances.

**Conclusion**

For the foregoing reasons, the Court should convict Philip Crawford on both prongs of the felony 18 U.S.C. § 111(a)(1) charged in Count Six and should require the defendant's physical presence at the verdict.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

*/s/ Mindy Deranek*
MINDY DERANEK
Assistant United States Attorney
WA Bar No. 43085
601 D. Street, NW
Washington, DC 20530
(202) 252-7776
Mindy.Deranek@usdoj.gov

*/s/ Adam Dreher*
ADAM DREHER
Michigan Bar No. P79246
Assistant United States Attorney
601 D. Street, NW
Washington, DC 20530
(202) 252-1706
Adam.Dreher@usdoj.gov